IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ERICA KENT, in her capacity as the Administratrix of the Estate of GEORGE J. HUSTON, JR, Deceased 44 South Osborn Avenue Youngstown, Ohio 44509 | CASE NO. JUDGE |
| Plaintiff | |
| v. | COMPLAINT (Plaintiff demands a trial by jury) |
| JOHN DOE NO. 1, in his individual capacity c/o Mahoning County Jail 110 Fifth Avenue Youngstown, Ohio 44503 | |
| And | |
| JOHN DOE NO. 2, in his individual capacity c/o Mahoning County Jail 110 Fifth Avenue Youngstown, Ohio 44503 | |
| And | |
| JOHN DOE NO. 3, in his individual capacity c/o Mahoning County Jail 110 Fifth Avenue Youngstown, Ohio 44503 | |
| And | |

| | |
|---|---|
| JOHN DOE NO. 4, in his individual capacity<br>c/o Mahoning County Jail<br>110 Fifth Avenue<br>Youngstown, Ohio 44503 | )<br>)<br>)<br>)<br>) |
| And | ) |
| JOHN DOE NO. 5<br>c/o Mahoning County Jail<br>110 Fifth Avenue<br>Youngstown, Ohio 44503 | )<br>)<br>)<br>) |
| And | ) |
| JOHN DOE NO. 6<br>c/o Mahoning County Jail<br>110 Fifth Avenue<br>Youngstown, Ohio 44503 | )<br>)<br>)<br>) |
| And | ) |
| MAHONING COUNTY, OHIO<br>c/o Mahoning County Jail<br>110 Fifth Avenue<br>Youngstown, Ohio 44503 | )<br>)<br>)<br>) |
| Defendants | ) |

1. The jurisdiction of this Court over the subject matter of this action is conferred on this Honorable Court pursuant to 42 U.S.C. 1983, 28 U.S.C. §1331, and 28 U.S.C. §1343. Venue is properly laid in this District pursuant to 28 U.S.C §1391 in that defendants are located and/or transact business in this District, and the cause of action asserted herein arose in this District.

2. Plaintiff Erica Kent ("Kent") whose residence address is 44 South Osborn Avenue, Youngstown, Ohio 44509 is the duly appointed, duly serving Administratrix of the Estate of George J. Huston, Jr. ("Huston"), Deceased.

3. Defendant John Doe No. 1, whose name is not now known is employed as a Corrections Officer at the Mahoning County Jail. John Doe No. 1's work address is 110 Fifth Avenue, Youngstown, Ohio 44503. John Doe No. 1 is being sued in his individual capacity. At all times material to this action, John Doe No. 1 was acting under color of state law.

4. Defendant John Doe No. 2, whose name is not now known is employed as a Corrections Officer at the Mahoning County Jail. John Doe No. 2's work address is 110 Fifth Avenue, Youngstown, Ohio 44503. John Doe No. 2 is being sued in his individual capacity. At all times material to this action, John Doe No. 2 was acting under color of state law.

5. Defendant John Doe No. 3, whose name is not now known is employed at the Mahoning County Jail. John Doe No. 3's work address is 110 Fifth Avenue, Youngstown, Ohio 44503. John Doe No. 3 is being sued in his individual capacity. At all times material to this action, John Doe No. 3 was acting under color of state law.

6. Defendant John Doe No. 4, whose name is not now known is employed at the Mahoning County Jail. John Doe No. 4's work address is 110 Fifth Avenue, Youngstown, Ohio 44503. John Doe No. 4 is being sued in his individual capacity. At all times material to this action, John Doe No. 4 was acting under color of state law.

7. Defendant John Doe No. 5, whose name is not now known is employed at the Mahoning County Jail. John Doe No. 5's work address is 110 Fifth Avenue, Youngstown, Ohio 44503. John Doe No. 5 is being sued in his individual capacity. At all times material to this action, John Doe No. 5 was acting under color of state law.

8. Defendant John Doe No. 6, whose name is not now known is employed at the Mahoning County Jail. John Doe No. 6's work address is 110 Fifth Avenue, Youngstown, Ohio 44503. John Doe No. 6 is being sued in his individual capacity. At all times material to this action, John Doe No. 6 was acting under color of state law.

9. Defendant Mahoning County, Ohio ("Mahoning") is, pursuant to applicable Ohio statutes, a duly constituted and duly operating governmental entity having a place of business at 110 Fifth Avenue, Youngstown, Ohio 44503. As part of its official functions Mahoning is entirely responsible for the staffing, training of staff, operation, and maintenance of the Mahoning County Jail.

10. On or about June 27, 2020, Huston was booked into the Mahoning County Jail on the charge of Burglary. Huston was previously incarcerated in the Mahoning County Jail for allegedly having committed the crime of Aggravated Menacing. During that previous incarceration, less than two months before the date of his death, Huston, on or about May 24, 2020, while still an inmate, attempted to commit suicide at the Mahoning County Jail by jumping from the second tier of cells to the ground.

11. Huston survived the May 24, 2020 attempt to commit suicide that he made while incarcerated in the Mahoning County Jail. Immediately after jumping from the second tier of cells in the Mahoning County Jail to the ground Huston was transported to the hospital. While in the hospital, Huston was granted bond. However, as alleged above, on or about June 27, 2020, Huston was returned to the Jail for allegedly having committed the crime of Burglary.

12. When Huston was returned to the Jail on or about June 27, 2020 a suicide assessment was, or should have been conducted of him. Any reasonable and competent suicide assessment conducted by any reasonable and competent person qualified to conduct suicide assessments would have, or should have, disclosed that approximately one month before June 27, 2020 Huston had attempted to commit suicide while incarcerated at the Jail. That May 24, 2020 suicide attempt by Huston made it clear that Huston was a suicide risk.

13. Had the Jail by and through its personnel, John Doe No. 1, John Doe No. 2, John Doe No. 3, John Doe No. 4, John Doe No. 5 and John Doe No. 6, conducted a competent suicide assessment of Huston, the conclusion that suicide precautions for Huston were necessary would have been manifest. At the very minimum Mahoning County Jail, in light of Huston's prior suicide attempt, should have placed Huston on suicide watch, should have carefully monitored and assessed Huston while he was on suicide watch, should have placed Huston in a cell both while he was on suicide watch, and if he was returned to the general population that had been suicide proofed, and should have vigilantly monitored Huston if he was placed in the general population. The Mahoning County Jail and its personnel, John

Doe No. 1, John Doe No. 2, John Doe No. 3, John Doe No. 4, John Doe No. 5, and John Doe No. 6, did not do a competent suicide assessment on Huston, and did not take even the minimum reasonable and necessary action to protect Huston, a known suicide risk.

14. Mahoning County Jail decided to assign Huston to a regular cell in the general population  The regular cell in which Huston was placed after being booked on or about June 27, 2020 was not "suicide proofed."  Once Huston was placed in a regular cell in the Mahoning County Jail's general population he was not subject to any special monitoring by Mahoning County Jail personnel, and received no special attention or treatment from Mahoning County Jail medical personnel.  The manner in which the Mahoning County Jail and its personnel, John Doe No. 1, John Doe No. 2, John Doe No. 3, John Doe No. 4, John Doe No. 5, and John Doe No. 6, handled Huston on and after June 27, 2020 epitomizes deliberate indifference to Huston's suicide history, the fact that Huston had attempted to commit suicide on May 24, 2020 at the Mahoning County Jail, the fact that Huston was a known suicide risk, and that special protections needed to be afforded to Huston to prevent him from making further attempts at suicide.

15. On or about July  , 2020 at approximately    a.m. Huston was found in his cell with a noose that Huston had made from materials found in his regular cell around his neck.  Huston had attached his home-made noose to a hook that was attached to the wall of the regular cell that Huston occupied.  Later that day Huston died.  Huston's death was correctly determined to be a suicide.

16. John Doe No. 1 was the Corrections Officer who conducted the initial booking when Huston returned to the Mahoning County Jail on or about June 27, 2020. John Doe No. 1 did not question Huston about his previous incarceration at the Mahoning County Jail and/or Huston's recent suicide attempt. John Doe No. 1 made no effort to access or review any records relating to Huston's prior incarceration at the Mahoning County Jail which records would have identified Huston as a clear suicide risk.

17. John Doe No. 2 was the Corrections Officer who conducted the initial suicide assessment when Huston returned to the Mahoning County Jail on or about June 27, 2020. John Doe No. 2 did not question Huston about his previous incarceration at the Mahoning County Jail and/or Huston's recent suicide attempt, or disregarded the responses Huston gave to questions about his suicidal ideation. John Doe No. 2 made no effort to access or review any records relating to Huston's prior incarceration at the Mahoning County Jail which records would have identified Huston as a clear suicide risk.

18. John Doe No. 3 was a Mahoning County Jail employee who conducted a suicide assessment when Huston returned to the Mahoning County Jail on or about June 27, 2020. John Doe No. 3 did not question Huston about his previous incarceration at the Mahoning County Jail and/or Huston's recent suicide attempt, or disregarded the responses Huston gave to questions about his suicidal ideation. John Doe No. 3 made no effort to access or review any records relating to Huston's prior incarceration at the Mahoning County Jail which records would have identified Huston as a clear suicide risk.

19. John Doe No. 4 was the Mahoning County Jail employee who made the decisions not to place Huston on suicide watch, to place Huston in the general population, and to assign Huston to a cell that had not been suicide proofed. The cell to which Huston was assigned without a roommate contained multiple items that facilitated Huston's eventual suicide which items would not have been present in a cell that had been suicide proofed. John Doe No. 4 made no effort to access or review any records relating to Huston's prior incarceration at the Mahoning County Jail which records would have identified Huston as a clear suicide risk.

20. John Doe No. 5 and John Doe No. 6 were Corrections Officers assigned to areas where Huston was housed during his second incarceration at the Jail. John Doe No. 5 and John No. 6 knew that Huston was a suicide risk and should have taken special care in monitoring Huston. John Doe No. 5 and John Doe No. 6 did not give Huston any special attention or monitoring.

21. The actions of John Doe No. 1, John Doe No. 2, John Doe No. 3, John Doe No. 4, John Doe No. 5, and John Doe No. 6, individually and collectively, constituted deliberate indifference to Huston's very recent suicide attempt which made Huston a known suicide risk.

22. Mahoning had created and permitted to exist a culture and custom of virtual disinterest in the identification, safety, welfare, and medical needs of suicidal inmates. Although Mahoning had promulgated written policies relating to prevention of suicide by inmates, Mahoning, through its Mahoning County Jail employees, medical care and service providers, and Mahoning County Jail administrators, did not follow those policies, and made no effort to ensure that

Mahoning County Jail personnel and medical care and service providers followed those policies. Mahoning through its Mahoning County Jail employees, medical care and service providers, and administrators, also regularly engaged in practices that created, constituted, and fostered an unjustifiably disinterested approach to identifying, monitoring, protecting, and attending to the medical needs of suicidal inmates. Those practices included, but were not limited to, the following:

a. Failing to obtain all available information at intake;

b. Failing to communicate information received at intake to other Mahoning County Jail personnel having direct contact with inmates;

c. Insufficient record keeping procedures;

d. Failure to properly staff the Mahoning County Jail;

e. Failure to properly and adequately train Mahoning County Jail personnel;

f. Failure to monitor general population cell blocks regularly;

g. Failing to identify person who should be placed on suicide watch;

h. Failing to place inmates on suicide watch when necessary;

i. Not keeping inmates placed on suicide watch on that status for enough time;

j. Returning inmates from suicide watch to the general population without complete and proper evaluation to determine whether return is warranted;

k. Placing inmates who have been returned from suicide watch to the general population in cells that have not been "suicide proofed"

    l.    Not providing sufficient and proper monitoring of inmates returned to the general population from suicide watch;

    m.    Failure to have necessary medical equipment and supplies available at the Jail;

    n.    Failure to maintain and assure the operability of equipment that was available at the Jail;

    o.    Failing and refusing to adequately enforce existing policies and procedures; and

    p.    Failing and refusing to make proper efforts to respond to mental health concerns of inmates and mental health related requests made by inmates;

Deliberate indifference to in the welfare and medical needs of suicidal inmates has risen to the level of official policy at the Mahoning County Jail. Huston is not the only inmate to have committed suicide while an inmate at the Mahoning County Jail during the past few years.

23. John Doe No. 1, John Doe No. 2, John Doe No. 3, John Doe No. 4, John Doe No. 5, John Doe No. 6, and Mahoning all knew or should have known that, given his recent suicide attempt while an inmate at the Mahoning County Jail, Huston should have been placed on suicide watch, and knew or should have known that Huston should have been confined in a "suicide proofed" cell. John Doe No. 1, John Doe No. 2, John Doe No. 3, John Doe No. 4, John Doe No. 5, John Doe No. 6, and Mahoning all knew or should have known that since Huston had previously

attempted to commit suicide while incarcerated at the Mahoning County Jail, Huston required a heightened level of monitoring by Jail personnel assigned to the pod in which Huston's cell was located. John Doe No. 1, John Doe No. 2, John Doe No. 3, John Doe No. 4, John Doe No. 5, John Doe No. 6, and Mahoning, individually and collectively, made no efforts to properly respond to the known suicide risk that Huston presented.

24. Huston's suicide was a direct and proximate result of the actions, inactions, and deliberate indifference of John Doe No. 1, John Doe No. 2, John Doe No. 3, John Doe No. 4, John Doe No. 5, John Doe No. 6, and Mahoning, individually and collectively. Each of the individual defendants, and Mahoning, all of whom were acting under color of state law at all times relevant to this action, was deliberately indifferent to the medical needs and welfare and the suicide history of Huston. John Doe No. 1, John Doe No. 2, John Doe No. 3, John Doe No. 4, John Doe No. 5, and John Doe No. 6, and Mahoning, individually and collectively. deprived Huston of substantive due process of law, procedural due process of law, and of the constitutional right to be free from cruel and unusual punishment afforded to Huston by the Fourteenth and Eighth Amendments to the United States Constitution. Kent as the representative of Huston's estate, is entitled to recover all available economic and compensatory damages provided by Federal law, state law, and the common law from John Doe No. 1, John Doe No. 2, John Doe No. 3, John Doe No. 4, John No. 5, John Doe No. 6, and Mahoning, jointly and severally.

25. In depriving Huston of his constitutional rights as described herein John Doe No. 1, John Doe No. 2, John Doe No. 3, John Doe No. 4, John Doe No. 5, John Doe

No. 6, and Mahoning, individually and collectively. acted willfully, wantonly, maliciously, and in reckless disregard for Huston's rights.

26. Huston's suicide was a direct and proximate result of the policies, practices, and customs of deliberate indifference to the welfare and medical needs of suicidal inmates alleged herein that were created by Mahoning and permitted by Mahoning to exist and operate at the Mahoning County Jail. Those policies, practices, and customs that Mahoning created and permitted to operate at the Mahoning County Jail constituted deliberate indifference to suicidal inmates' medical needs. Therefore, Mahoning deprived Huston of substantive due process of law, procedural due process of law, and of the constitutional right to be free from cruel and unusual punishment afforded by the Fourteenth and Eighth Amendments to the United States Constitution. Kent as the representative of Huston's estate is entitled to recover all available economic and compensatory damages provided by Federal law, state law, and the common law from Mahoning.

WHEREFORE, Kent requests that this Honorable Court:

a. Find that John Doe No. 1, John Doe No. 2, John Doe No. 3, John Doe No. 4, John Doe No. 5, John Doe No. 6, and Mahoning, individually and collectively, acted deliberately indifferently and unconstitutionally toward Huston and are liable for the damages sustained by Huston's estate;

b. Grant Kent, as Administrator of Huston's estate, judgment against John Doe No. 1, John Doe No. 2, John Doe No. 3, John Doe No. 4, John Doe No. 5, and John Doe No.

    6, and Mahoning, jointly and severally, for economic damages in an amount to be determined at trial but, in no event, less than One Hundred Fifty Thousand Dollars ($150,000.00);

c. Grant Kent, as Administrator of Huston's estate, judgment against John Doe No. 1, John Doe No. 2, John Doe No. 3, John Doe No. 4, John Doe No. 5, John Doe No. 6, and Mahoning, jointly and severally, for compensatory damages in an amount to be determined at trial but, in no event, less than Two Hundred Fifty Thousand Dollars ($250,000.00);

d. Grant Kent, as Administrator of Huston's estate, judgment against John Doe No. 1, John Doe No. 2, John Doe No. 3, John Doe No. 4, John Doe No. 5, and John Doe No. 6, jointly and severally, for punitive damages in an amount to be determined at trial but, in no event, less than Five Hundred Thousand Dollars ($500,000.00);

e. Grant Kent, as Administrator of Huston's estate, judgment against John Doe No. 1, John Doe No. 2, John Doe No. 3, John Doe No. 4, John Doe No. 5, John Doe No. 6, and Mahoning for interest on all sums found to be due from them;

f. Grant Kent, as Administrator of Huston's estate, judgment against John Doe No. 1, John Doe No. 2, John Doe No. 3, John Doe No. 4, John Doe No. 5, John Doe No. 6, and Mahoning, jointly and severally, for the costs of this action including the reasonable attorney fees incurred by Kent, as Administrator of Huston's estate, in the prosecution of this action; and

g. Grant Kent, as Administrator of Huston's estate, any further relief that this Honorable Court deems to be equitable and just.

Respectfully submitted,


s/David L. Engler
David L. Engler (0030264)
181 Elm Road, N.E.
Warren, Ohio 44483
Telephone: (330) 727-9997
Fax: (484) 970 1580
Email: davidengler@davidengler.com
Attorney for Plaintiff